UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBRA HAND,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 11cv5297

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

NOTING DATE: MARCH 23, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 10, 11, 12).

The ALJ's findings that plaintiff began seeking treatment for stress related impairments only in October 2007 and that she made no reports of any panic attacks before her 2002 date last insured are not supported by substantial evidence in the record

as a whole. The ALJ also erred by failing to consider explicitly lay evidence regarding plaintiff's ability to work. For these reasons, and based on the relevant record, the Court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

BACKGROUND

Plaintiff, DEBRA HAND, was born in 1953 and was forty-five years old on her alleged date of disability onset of July 17, 1998 (Tr. 132). Plaintiff had eleven years of experience as a bar manager and bartender at her parent's restaurant (Tr. 143). Her last experience working when she applied for disability benefits was teaching bartending (id.). Plaintiff alleged disability prior to her date last insured due to a combination of three problems: severe degeneration of her knees, which she alleged made it difficult for her to stand and walk; post-cholecystectomy syndrome, from which she suffered abdominal pain and nausea; and, panic attacks that began when she worked at her parents' restaurant in an area of Tacoma that had "gang bangers . . . . shooting each other" (Opening Brief, ECF No. 10, pp. 3-4; see also Tr. 10-11, 15-16).

PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in May, 2007 (Tr. 132-34). This application was denied initially and following reconsideration (Tr. 73-75, 80-84). Plaintiff's requested hearing was held on September 23, 2009 before Administrative Law Judge Donald J. Willy ("the ALJ") (Tr. 8-45, 85-88). On October 22, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 48-60).

On March 14, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-7). See 20 C.F.R. § 404.981. Defendant filed the sealed administrative transcript related to this matter ("Tr.") on July 15, 2011 (ECF No. 8). On April 16, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF No. 1). In her Opening Brief, plaintiff raises the following issues: whether or not the ALJ committed harmful error in his evaluation of: (1) the medical and lay evidence regarding plaintiff's alleged panic attacks; (2) the medical and lay evidence regarding plaintiff's severe physical impairments and her alleged functional limitations regarding standing and/or walking up to six hours a day; and (3) plaintiff's credibility (see ECF No. 10, pp. 1-2). Plaintiff also contends that this matter should at least be remanded for consideration of new evidence (id.). Regarding plaintiff's request for relief, plaintiff requests remand for payment of benefits, or alternatively, remand for a *de novo* hearing and further consideration of this matter by the Commissioner (id., p. 2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's

impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." <u>Bray v. Comm'r of SSA</u>, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* <u>SEC v. Chenery Corp</u>., 332 U.S. 194, 196 (1947) (other citation omitted)); <u>see also</u> <u>Stout v. Commissioner of Soc. Sec.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." <u>Stout</u>, <u>supra</u>, 454 F.3d at 1054 (*citing* <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. <u>Stout</u>, <u>supra</u>, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

## DISCUSSION

1. <u>The ALJ committed harmful error in his evaluation of the medical and lay evidence regarding plaintiff's alleged panic attacks.</u>

Plaintiff testified that she was having panic attacks every day during the period of time from 1998 through 2002 (Tr. 25). She testified that she had "knives put to my head . . . . [and] guns at my head," while working at the restaurant (<u>id.</u>). She testified that when she had a panic attack, she felt like her heart was coming out of her chest and "like the end of the world is coming" (Tr. 27). She testified that most of the time she would need someone to go with her when she left the house, although she sometimes was able

to go to the Walgreens two blocks away from her house (Tr. 29-30). Although medication helped, plaintiff testified that she would be able to go a couple of weeks without an attack, then they would start up again (Tr. 31). At plaintiff's hearing, the medical expert testified that if plaintiff's testimony regarding the types of stresses she was suffering from were accounted for, "that would fully depreciate her ability to engage in activities" (Tr. 37).

On September 9, 1997, less than a year prior to plaintiff's date of alleged disability onset, when being seen for physical symptoms, plaintiff's past medical history was noted as including "a history of panic attacks for which she takes Xanax on a prn basis" (Tr. 219; see also Tr. 243, 252 (January 11, 1996 PMH of "panic attacks" and current medications of Xanax), 256, 265, 510). On July 23, 2002, within a month after plaintiff's last date insured, Dr. Allan Weissman, M.D. noted plaintiff's report of panic attacks and her prescription for Xanax (Tr. 405).

In his written decision, the ALJ included the following:

> As to the claimant's mental impairments, she began seeking treatment for stress related impairments only in October 2007 (internal citation to exh. 12F-13 et seq.) I note this initial interview shows the claimant stopped work when she sold her business; and that over time she spent the profits she made from the sale, though she also admitted having gambling debts. She later described continuing to gamble, sometimes spending $500.00 per week (internal citation to Exh. 12F-8). The claimant's daughter has written on the claimant having a panic attack in June 2009 (Exh. 14F), mentioning that the attack that day was like the ones her mother had been having since the 1990s. I simply note that claimant made no reports of any such attacks before her 2002 date last insured, nor has she since reported having such attacks before that date.

(Tr. 56).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 6

The Court first notes that plaintiff did report at the hearing that she had panic attacks before 2002, as previously discussed, although the ALJ failed to credit plaintiff's testimony at her hearing that she was suffering from panic attacks during the relevant time frame on the basis of plaintiff's memory difficulties (see Tr. 58).

Regarding the ALJ's finding that plaintiff "began seeking treatment for stress related impairments only in October 2007" and that she "made no reports of any such attacks before her 2002 date last insured," the Court already has discussed evidence in the record of reports by plaintiff of obtaining treatment for panic attacks prior to October, 2007 and of multiple reports of panic attacks by plaintiff before her 2002 date last insured, see supra, section 1 (see also Tr. 219, 243, 252, 256, 265, 405, 510).

Therefore, for these reasons and based on the relevant record, the Court concludes that the ALJ's findings that plaintiff "began seeking treatment for stress related impairments only in October 2007" and that she "made no reports of any such attacks before her 2002 date last insured," (Tr. 56) are not findings supported by substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750.

In addition, the Court also notes that federal regulations set forth a specific procedure for evaluating mental impairments. 20 C.F.R. § 404.1520a(a). This procedure applies "at each level in the administrative review process," including the ALJ's written decision issued after a hearing. See id. According to this procedure, the ALJ first must determine whether or not a medically-determinable mental impairment exists by evaluating the relevant symptoms, signs and laboratory findings. 20 C.F.R. § 404.1520a(b)(1); see also 20 C.F.R. §§ 404.1508, 404.1528.

When determining that plaintiff did not suffer from any severe mental impairments, the ALJ did not evaluate appropriately the relevant symptoms and signs regarding plaintiff's panic attacks as he found no evidence that she reported any symptoms in this regard prior to her date last insured in 2002 and found that she did not seek treatment for her panic attacks until October, 2007 (see Tr. 56). Both of these findings are not supported by substantial evidence in the record, which demonstrates that plaintiff was reporting panic attacks consistently in 1996 and 1997 and that she had sought treatment for these attacks, receiving a prescription for Xanax for them.

Therefore, the Court cannot find that the ALJ appropriately considered plaintiff's symptoms and signs when determining that plaintiff did not suffer from any severe mental impairments. See 20 C.F.R. § 404.1520a. In addition, the medical evidence of plaintiff's mental impairment in the record is significant probative evidence that the ALJ should not have rejected without proper discussion. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

The Court also notes that the ALJ failed to discuss lay testimony regarding plaintiff's panic attacks, committing legal error. Ms. Sarah Hand, plaintiff's daughter provided two reports of lay testimony regarding plaintiff's panic attacks (Tr. 195-200, 491). She indicated that before June 30, 2002, plaintiff "had panic attacks and at times was unable to leave her house or drive herself anywhere" (Tr. 195). She also indicated that before June 30, 2002, plaintiff at times would "have a panic attack and [] be unable to function for the rest of the day" and that plaintiff left crowded rooms due to panic

attacks (Tr. 197). The ALJ failed to discuss this report by plaintiff's daughter or these particular factual allegations.

Mr. Dennis Hand, plaintiff's husband, also supplied lay testimony (see Tr. 186-91). He indicated that before June 30, 2002, plaintiff "couldn't be in a room with 5 or more people and keep her composure, she would have full blown panic attacks" (Tr. 186). He also indicated that before June 30, 2002 he had witnessed many panic attacks and that plaintiff could be taxed by her panic attacks when working on tasks (Tr. 189, 190). The ALJ failed to discuss this report by plaintiff's husband or these particular factual allegations.

Not only did the ALJ fail to discuss the lay testimony of plaintiff's daughter and husband regarding her panic attacks, but also, the ALJ failed to discuss the lay testimony of plaintiff's son (see Tr. 193-94). Although defendant argues that the lay testimony did not concern the appropriate time frame, much of the lay testimony specifically included an explicit indication that it was provided for the time period before June 30, 2002 (see, e.g., Tr. 195, 197, 186, 189, 190). In addition, the ALJ did not indicate any reliance on this factor as he failed to discuss these three reports. See Bray, supra, 554 F.3d at 1226-27 ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(1), (4). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467). Testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009).

In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting

the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases).

Based on this standard and the relevant record, the Court concludes that the ALJ's error in failing to discuss the lay testimony by plaintiff's husband and son and failing to discuss one of the lay statements provided by plaintiff's daughter were not harmless errors. The lay testimony should be evaluated anew following remand of this matter. See id.

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ erred in his review of plaintiff's alleged mental impairment, see Magallanes, supra, 881 F.2d at 750, and did not consider appropriately the relevant symptoms. See 20 C.F.R. § 404.1520a. As discussed, the ALJ also committed harmful errors in his evaluation of the lay testimony, failing to provide germane reasons to discount relevant lay evidence. Stout, supra, 454 F.3d at 1056. As a result, this matter should be reversed and remanded to the Commissioner for further administrative proceedings, including a *de novo* hearing. See id.; Bayliss, supra, 427 F.3d at 1214 n.1; Magallanes, supra, 881 F.2d at 750.

> 2. The ALJ committed harmful error in his evaluation of the medical and lay evidence regarding plaintiff's severe physical impairments and her alleged functional limitations regarding standing and walking up to six hours a day.

Regarding state agency medical consultants, the ALJ is "required to consider as opinion evidence" their findings, and also is "required to explain in his decision the weight given to such opinions." Sawyer v. Astrue, 303 Fed. Appx. 453, 455, 2008 U.S.

App. LEXIS 27247 at **3 (9th Cir. 2008) (citations omitted) (unpublished opinion).

According to Social Security Ruling (hereinafter "SSR") 96-6p, "[a]dministrative law judges . . . . may not ignore the[] opinions [of state agency medical and psychological consultants] and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180 at *2. Likewise, SSR 96-5p, provides that State agency "medical and psychological consultant findings about the nature and severity of an individual's impairment(s), including any RFC assessments, become opinion evidence," and "administrative law judges . . . . must address the[se] opinions in their decisions." SSR 96-5p, 1996 WL 374183 at *6.

However, even where the ALJ fails to discuss the state agency consultants' opinions, the decision may be upheld where "the ALJ's ultimate conclusion was supported by substantial evidence." Davis v. Barnhart, 71 Fed. Appx. 664, 667, 2003 U.S. App. LEXIS 15469 at **5 (9th Cir. 2003) (unpublished opinion).

The ALJ here found that plaintiff suffered from the severe impairments of degenerative joint disease in the knees, a history of abdominal pain and diabetes (see Tr. 53). The ALJ also found that plaintiff could stand and/or walk up to six hours in an eight-hour work day (Tr. 57). In making this finding, the ALJ rejected the finding by State agency evaluator Ms. Jo Olson ("Ms. Olson") that plaintiff only could stand and/or walk at least two hours per eight-hour work day (see Tr. 441). Plaintiff also complains that the ALJ failed to discuss lay testimony provided by plaintiff's husband indicating that before June 30, 2002, plaintiff could not stand more than twenty minutes at a time (see Tr. 187);

and, lay testimony provided by plaintiff's daughter that before June 30, 2002 plaintiff could not stand or walk for very long (see Tr. 196).

This Court already has concluded that the ALJ erred by failing to discuss explicitly the lay testimony, see supra, section 1. The Court also already has concluded that this matter should be reversed and remanded for further consideration, see supra, section 1. For this reason, the Court concludes that the lay testimony regarding plaintiff's limitation in her ability to stand and walk should be evaluated explicitly following remand. See Stout, 454 F.3d at 1056. As the ALJ made a residual functional capacity determination at odds with these lay opinions, it was not harmless error to fail to give germane reasons to reject them. See id.

Similarly, the ALJ made a residual functional capacity determination at odds with the opinion by State agency records reviewer Ms. Olson (see Tr. 57, 441). Defendant argues that this medical consultant is not evidenced to be a doctor and her opinion was disregarded properly (see Response, ECF No. 11, p. 12). Although plaintiff contends that Ms. Olson's opinion was affirmed by Dr. Robert Hoskins, M.D., this is not obvious from the record (see Reply, ECF No. 12, p. 8 (*citing* Tr. 47)). Social Security records often include multiple opinions from State Agency reviewing consultants, whereby a medical or psychological doctor explicitly reviews and potentially affirms a residual functional capacity assessment from a non-doctor (see, e.g., Jivatma v. Astrue, 2011 U.S. Dist. LEXIS 94213 at *25 (W.D. Wash August 23, 2011) (Case No. 3:10cv5737JRC, ECF Doc. No. 20, pp. 15-16) (unpublished opinion) (*citing* Jivatma Transcript, Tr. 270, 274)). Here, that does not appear to be the case (see Tr. 47).

However, plaintiff correctly points out that the ALJ failed to recognize that Ms. Olson opined that plaintiff was limited to standing and walking two hours in an eight-hour workday (see Tr. 441). Instead, the ALJ erred by indicating that Ms. Olson assessed plaintiff as having a residual functional capacity "for the exertional demands of light work," when Ms. Olson actually found that plaintiff had exertional limitations (see Tr. 57; see also Tr. 441). Ms. Olson's opinion regarding plaintiff's exertional limitations to standing and walking two hours a day also is significant probative evidence that the ALJ should have discussed explicitly and properly. See Vincent, supra, 739 F.2d at 1394-95.

For the reasons stated and based on the relevant record, the Court concludes that Ms. Olson's opinion should be evaluated anew following remand of this matter. SSR 96-5p, 1996 WL 374183 at *6; Vincent, supra, 739 F.2d at 1394-95. As discussed, the lay opinion evidence regarding plaintiff's limitations in standing and walking also should be evaluated following remand of this matter. See Stout, supra, 454 F.3d at 1056.

    3. <u>Plaintiff's testimony should be evaluated anew following remand of this matter</u>.

The Court has determined already that the ALJ erred in his review of the medical evidence and the lay testimony, see supra, sections 1 and 2. A determination of plaintiff's credibility relies on the assessment of the medical evidence. See 20 C.F.R. § 404.1529(c). The Court also notes that a review of the record suggests that the ALJ's interpretation of one aspect of plaintiff's testimony was not consistent with her testimony. At her hearing, in response to the question that "So you actually got a job, but then you had to quit," plaintiff testified that "And, then with the bartending school, I thought I could do four

hours. I thought, well, maybe I could - - because I had four children at home I needed to help" (Tr. 34). The logical deduction from this testimony is that plaintiff thought that she could work part time and was trying to work so that she could earn money in order to help support her family (see id.). However, the ALJ interprets plaintiff's testimony as suggesting that she had to leave the house in order to get a part time job because she needed to stay home and take care of her children (see Tr. 58).

The ALJ indicated that he was discounting plaintiff's credibility because "she was caring for 4 children at home" (Tr. 58). Because plaintiff was discussing why she was trying to work, the deduction that she was trying to work so that she could be home to take care of her children does not appear to be a rationale interpretation of the testimony (see Tr. 34). For these reasons and based on the relevant record, the Court concludes that plaintiff's testimony should be evaluated anew following remand of this matter.

    4. <u>This matter should be remanded for a *de novo* hearing and further consideration of this matter by the Commissioner</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. There is a large volume of medical and other evidence, and there is much in the record that was not considered by the ALJ, including evidence regarding panic attacks, lay testimony and new evidence submitted to the Appeals Council. Furthermore, the medical evidence in the record is not conclusive.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity. See Sample, supra, 694 F.2d at 642. In addition, remanding the matter also will allow the Commissioner the opportunity to consider fully the new evidence plaintiff submitted to the Appeals Council.

## CONCLUSION

The ALJ's findings that plaintiff began seeking treatment for stress related impairments only in October 2007 and that she made no reports of any panic attacks before her 2002 date last insured are not supported by substantial evidence in the record as a whole. The ALJ also committed harmful error by failing to consider explicitly lay evidence regarding plaintiff's ability to work.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 23, 2012, as noted in the caption.

Dated this 2nd day of March, 2012.

J. Richard Creatura
United States Magistrate Judge